97 F.3d 1458
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stafford CROSS, Plaintiff-Appellant,
v.
CITY OF ONTARIO, a public entity; Ontario Police
Department; and Lowell Stark, Defendants-Appellees.
 No. 95-55437.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 10, 1996.
Decided Sept. 16, 1996.
 
 1
 Before: FERNANDEZ and TASHIMA, Circuit Judges, and MERHIGE, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff Stafford Cross brings this employment discrimination action against defendants City of Ontario ("City"), Ontario Police Department ("Department") and Lowell Stark, Chief of the Department. Cross, a police officer, alleges that defendants denied him a promotion to corporal because he is black. The district court granted summary judgment to all defendants on all claims. On appeal, Cross pursues the following claims: (1) race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (2) race discrimination in violation of 42 U.S.C. § 1983; and (3) conspiracy to discriminate in violation of 42 U.S.C. § 1985.[1] We have jurisdiction under 28 U.S.C. § 1291, and we reverse in part, affirm in part and remand.
 
 Standard of Review
 
 4
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 Discussion
 
 5
 I. Title VII Employment Discrimination Claims
 
 A. Race Discrimination
 
 6
 Under Title VII, a plaintiff must initially establish a prima facie case of race discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). After plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection. Id. at 802-03. If the employer carries its burden, the plaintiff is afforded the opportunity to present evidence showing that the employer's stated reason for the rejection was merely pretextual. Id. at 804. Applying this rubric to the allegations made by Cross, we conclude that summary judgment was prematurely granted on this claim.
 
 1. The Prima Facie Case
 
 7
 To prove a prima facie case of race discrimination, Cross must show that: (1) he belongs to a racial minority; (2) he applied and was qualified for an available position; (3) he was rejected for the position despite his qualifications; and (4) the position remained open after his rejection and the employer continued to seek applications from other people with similar qualifications. See id. at 802.
 
 
 8
 As the district court noted, Cross clearly satisfied the first, third and fourth McDonnell Douglas requirements. Cross belongs to a racial minority, he was rejected for the promotion to the rank of corporal, and the promotion was awarded to non-black officers after Cross's rejection. However, the district court found that Cross failed to satisfy the second McDonnell Douglas prong because he could not show that he was qualified for the corporal position. In our view, the district court could only reach this conclusion by weighing the evidence and concluding that defendants have the stronger case. It is not a court's function on a motion for summary judgment to weigh the evidence, but merely to ascertain whether the plaintiff has presented sufficient evidence to raise a genuine issue of material fact. Warren, 58 F.3d at 441.
 
 
 9
 The district court concluded that Cross had not shown that he was qualified to take on the "role model" position of corporal. The district court based its finding on staff evaluations, prepared by Department superiors to assess the candidates for promotion. The evaluations indicate that Cross has a long history of disciplinary problems within the Department, and that he is generally considered to be a mediocre officer.
 
 
 10
 Cross challenges the district court's reliance on these evaluations. He contends that the evaluations are suspect because they are subjective inquiries prepared by predominately white superiors. We have stated that the use of subjective factors to evaluate applicants for hire or promotion is not per se illegal. Warren, 58 F.3d 443; Jauregui v. City of Glendale, 852 F.2d 1128, 1135 (9th Cir.1988). However, "subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized." Warren, 58 F.3d 443; Jauregui, 852 F.2d 1136.
 
 
 11
 Six staff evaluations were submitted by supervisorial officers familiar with Cross's work. All six evaluations contained negative comments about Cross. However, of the six evaluators, three had given Cross good performance evaluations that were inconsistent with the negative promotion evaluations. In fact, a review of Cross's annual performance evaluations from August 1985 to January 1993 reveals that Cross consistently received competent to very good ratings.[2] Sergeant Scutella gave Cross a promotion evaluation rating Cross below average. However, Scutella inconsistently rated Cross "very good" in a performance evaluation during the same period the promotion evaluation was completed. Reconciliation of these two evaluations given by the same person during the same period of time requires a factfinder's judgment. Thus, a genuine issue of material fact remains regarding the reliability of the staff evaluations used in the selection process.
 
 
 12
 The district court also found summary judgment appropriate because Cross was repeatedly reprimanded by the Department.[3] During the relevant period, Cross received eight reprimands for various offenses.[4] These reprimands are counterbalanced, however, by Cross's accomplishments during the same time period. Cross received two commendations from supervisors for his report writing and investigative work, and a commendation from the district attorney for his assistance in serving an arrest warrant. One evaluation noted that Cross received a Letter of Appreciation from Chief Stark for his professionalism while assisting in a double homicide investigation. Cross was also presented with an award from the California Highway Patrol, and he received a Letter of Appreciation from Captain Powers.
 
 
 13
 The district court only considered the negative factors in Cross's personnel record without fairly balancing those factors against the numerous positive accomplishments. Given Cross's exemplary performance on the oral examination and his ranking on the A band of the eligibility list, we conclude that Cross has raised a genuine issue of material fact that he was qualified for the corporal position. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (the burden of establishing a prima facie case of disparate treatment is not onerous). Thus, the burden of production then shifted to defendants. See McDonnell Douglas, 411 U.S. at 802-03.
 
 
 14
 2. Defendants' Legitimate, Nondiscriminatory Reasons
 
 
 15
 To meet their burden of articulating a legitimate, nondiscriminatory reason for the decision not to promote Cross, defendants put forth evidence that they did not promote Cross because of his average education level, lackluster past employment history, poor performance and staff evaluations, and his long history of reprimands.
 
 
 16
 Defendants need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient that defendants submit admissible evidence sufficient to raise a genuine issue of fact that they did not discriminate against Cross. See Burdine, 450 U.S. at 254-55. We conclude that, for purposes of the summary judgment motion, defendants met their burden of production. The presumption raised by the prima facie case was therefore rebutted.
 
 3. Pretext
 
 17
 Cross must now raise a genuine factual question as to whether the articulated reason is pretextual. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993). Falsity alone is insufficient to establish pretext; instead, a plaintiff must establish that the defendant's articulated reason was a pretext for discrimination. Id.
 
 
 18
 To meet this burden, Cross alleges that he was subjected to racial slurs and jokes at the Department. He also offers statistical evidence showing that blacks were under-represented in the Department. The district court found that the racial slurs and jokes were "sporadic, isolated comments," and therefore insufficient to avoid summary judgment. Moreover, the district court concluded that the statistics did not rebut the presumption. We disagree.
 
 
 19
 "Although the mere existence of a prima facie case, based on the minimum evidence necessary to raise a McDonnell Douglas presumption, does not preclude summary judgment, the plaintiff [who has established a prima facie case] need produce very little evidence of discriminatory motive to raise a genuine issue of fact as to pretext." Warren, 58 F.3d at 443 (quoting Lindahl v. Air France, 930 F.2d 1434, 1437 (9th Cir.1991) (internal quotations omitted)). Any indication of discriminatory motive may suffice to raise a question that can only be resolved by a factfinder. Warren, 58 F.3d at 443. In fact, once a plaintiff has established a prima facie case, "summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the elusive factual question of intentional discrimination." Id.
 
 
 20
 a. Racial Slurs and Jokes
 
 
 21
 We have held that evidence of discriminatory remarks may create an inference of discriminatory motive. See Warren, 58 F.3d at 443; see also Lindahl, 930 F.2d at 1439. To establish pretext, there must be a sufficient nexus between the alleged discriminatory remarks and the adverse employment decision. Dehorney v. Bank of America, 879 F.2d 459, 468 (9th Cir.1989). However, even if there is no nexus to the adverse employment decision, such that the remarks themselves are insufficient to withstand summary judgment, the remarks are still relevant evidence that, along with other evidence, may create a strong inference of intentional discrimination. Mangold v. California Pub. Util. Comm'n., 67 F.3d 1470, 1477 (9th Cir.1995).
 
 
 22
 Here, Cross adduced evidence of several instances of racial slurs and jokes by fellow officers in his presence. Some of these discriminatory remarks were made by officers who completed his promotion evaluations. For example, Officer Rump, once told Cross and another black officer that "I had to tell my wife that you guys were police officers and you were not here casing for a robbery." Although, in the district court's opinion this was a race-neutral remark, taken in the context in which it was made, others, including Cross, could reasonably believe that the comment was intended as a racial slur directed at blacks. Officer Rump did not recommend Cross for promotion.
 
 
 23
 Although these comments taken individually would be insufficient to rebut pretext, considered as a whole, a factfinder could reasonably infer that an atmosphere of tolerated racism and bias existed within the Department. This is especially compelling evidence given that the individuals responsible for the comments were integral in denying Cross the promotion. Additionally, even though several other racist remarks were made by persons not involved in the promotion process, evidence of those remarks bolsters the inference of intentional discrimination within the Department. See Mangold, 67 F.3d at 1477.
 
 
 24
 b. Statistical Evidence
 
 
 25
 Cross offered statistics showing that black officers were not promoted and were denied appointment to special assignments within the Department.[5] The district court found that Cross's statistics were insufficient to establish a stark pattern of discrimination unexplainable on other grounds.
 
 
 26
 Statistical evidence regarding an employer's employment policy and practices "may be helpful" in establishing that a particular employment decision was in conformance with a general pattern of discrimination. McDonnell Douglas, 411 U.S. at 805; Warren, 58 F.3d at 443; see also Diaz v. American Tel. & Tel., 752 F.2d 1356, 1362 (9th Cir.1985) (statistical evidence is unquestionably relevant in a Title VII disparate treatment case).
 
 
 27
 Here, the district court appears to have improperly determined that Cross's statistical evidence was invalid as a matter of law. The district court, relying on Rose v. Wells Fargo & Co., 902 F.2d 1417, 1423 (9th Cir.1990), and Palmer v. United States, 794 F.2d 534, 539 (9th Cir.1986), reasoned that for Cross to show disparate treatment based solely on statistics, he would have to show a stark pattern of discrimination. However, these cases are inapposite because they hold that a plaintiff cannot prove a prima facie case of disparate treatment based solely on statistical evidence.
 
 
 28
 Cross does not offer the statistical evidence to prove a prima facie case. Rather, the evidence is offered to show that defendants' stated reasons for rejecting his promotion were pretextual. Thus, "even when not sufficient to establish a prima facie case, statistical evidence is helpful in showing that an employer's articulated reason for the employment decision is pretextual." Diaz, 752 F.2d at 1363.
 
 
 29
 In sum, we conclude that Cross has submitted sufficient evidence to warrant a trial on his Title VII claim. Despite his being placed on the A band of the eligibility list for the corporal position, Cross was rejected while white candidates ranked below him were hired from the B band of the eligibility list. Given the allegations that the staff evaluations were subjectively tainted with bias and racism, the allegations of racial slurs and jokes by staff evaluators, and the statistical evidence showing that blacks were under represented in the Department, there is a genuine issue of material fact as to defendants' motive in rejecting Cross for promotion. Accordingly, the district court should not have granted summary judgment on the Title VII discrimination claim.
 
 B. Retaliation
 
 30
 The McDonnell Douglas allocation of proof that governs disparate treatment claims also governs retaliation claims. Miller v. Fairchild Indus., Inc., 797 F.2d 727, 730 (9th Cir.1986). Cross may establish a prima facie case of retaliation by showing that (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. Miller, 797 F.2d at 731.
 
 
 31
 The district court found that Cross established the first two elements of his prima facie case because he engaged in protected activity by filing an EEOC complaint and was thereafter subject to adverse employment action. The court, however, determined that Cross failed to prove a sufficient causal nexus between these two elements. We agree.
 
 
 32
 Cross argues that his 1993 performance evaluation contained negative criticism as a result of his filing the EEOC action, and that his 1994 performance evaluation was inferior to his previous evaluations. A review of the comments in both evaluations reveal that these evaluations are consistent with prior evaluations in that they denote both his negative attributes and positive accomplishments. Moreover, both evaluations gave Cross an overall rating of competent, which is consistent with the competent to very good evaluations he had received in the past.
 
 
 33
 We also reject Cross's claim of increased disciplinary action. The number of times Cross was disciplined after he filed his EEOC claim is comparable to the number of disciplinary actions he was subjected to prior to the discrimination charge. Finally, Cross's assertion that another black officer was promoted in 1993 as an act of retaliation by the Department is unsupportable on its face. The officer was ranked higher on the eligibility list than Cross for that year.
 
 
 34
 As Cross failed to make out a prima facie retaliation claim, we affirm the district court's grant of summary judgment on this claim.
 
 II. 42 U.S.C. § 1983 Claim
 
 35
 To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that a person acting under the "color of state law" deprived the plaintiff of a right secured by federal law. Parratt v. Taylor, 451 U.S. 527, 535 (1981).
 
 A. Chief Stark
 
 36
 Cross contends that Chief Stark violated his rights under § 1983 by failing to address the racial slurs and jokes that were being told by officers within the Department. Cross also alleges that Stark violated his rights by implementing the staff evaluation policy without adequate guidelines and objectives, or approval and consent from the Ontario personnel department. His claims lack merit.
 
 
 37
 In order to prove discrimination in violation of § 1983, a plaintiff must demonstrate that the defendant acted with the intent to discriminate. Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1112 (9th Cir.1991). Moreover, a supervisor can only be held vicariously liable under § 1983 for failure to supervise others if the abuse is such that the supervisor is on notice to correct the alleged deprivation. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989). Here, the alleged racial slurs and jokes were not so rampant as to require Stark's intervention. We therefore conclude that Stark is not subject to personal liability for the racial slurs and jokes.
 
 
 38
 Moreover, there is no evidence that Stark acted with an intent to discriminate when he approved the policy using staff evaluations to assess promotability. Any such allegation is sheer speculation by Cross, unsupported by evidence. Accordingly, we will affirm the district court's dismissal of the claims against Chief Stark.
 
 B. Ontario's Monell Liability
 
 39
 Under Monell v. Department of Social Serv., 436 U.S. 658, 670 (1978), a city may be sued as a person under § 1983. To be liable, the plaintiff must demonstrate that a municipal policy results in a constitutional deprivation. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). It is not enough that a city engages in a single incident of unconstitutional activity. Id.
 
 
 40
 Here, Cross alleges that the staff evaluation procedure is an unconstitutional city policy. He is wrong. Cross has not provided any evidence that the policy has resulted in the denial of a promotion to any other racial minority besides himself. In fact, two minorities were promoted to corporal at the same time he sought the promotion. Cross has alleged a single incident of employment discrimination cognizable under Title VII. He has not, however, demonstrated that defendants' engaged in widespread constitutional abuses. Cross therefore cannot recover against the City or the Department under Monell.
 
 III. 42 U.S.C. § 1985(3)
 
 41
 To state a claim under § 1985(3), a plaintiff must establish that a private party and the government conspired to deprive him of his constitutional rights. Calderia v. County of Kauai, 866 F.2d 1175, 1181 (9th Cir.), cert. denied, 493 U.S. 817 (1989). Here, Cross has utterly failed to provide any evidence suggesting a conspiracy between Chief Stark and the Department or City to deprive him of his constitutional rights. Accordingly, summary judgment was properly granted as to this claim.
 
 CONCLUSION
 
 42
 The district court prematurely granted summary judgment on the Title VII discrimination claim. The district court is affirmed in all other respects.
 
 
 43
 REVERSED in part, AFFIRMED in part and REMANDED. Cross shall recover of defendants-appellees his costs on appeal.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cross has not pursued his claim under 42 U.S.C. § 1981 on appeal
 
 
 [2]
 The rating scale was outstanding, very good, competent, improvement needed, and unsatisfactory
 
 
 [3]
 The time period relevant to Cross's promotion is August 1985 through October 1992. Accordingly, reprimands received from 1993 to 1994, which were considered by the district court, have no bearing on the Department's decision not to promote Cross
 
 
 [4]
 The disciplinary actions were for tardiness (3), personal use of Department phones (1), traffic accident (1), failure to complete a property report (1), inappropriate handling of an arrestee with a medical condition (1), and a two-day suspension for failing to provide timely backup (1)
 
 
 [5]
 Cross also offered statistical evidence showing that black officers made up 2.7% of the Department, while blacks represented 6.9% of Ontario's population. The district court found that evidence so inadequate that it excluded it from its consideration. We do not, and need not, consider whether that exclusion was appropriate. However, we do note that the district court may admit that evidence if, in light of the other evidence developed during further proceedings in this case, it appears to be sufficiently probative. Cf. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 651-53; Cerrato v. San Francisco Community College Dist., 26 F.3d 968, 976-77 (9th Cir.1994)